United States Dept of Interior, 17-2211. Good morning, Christina Martin for New Mexico Farm & Livestock Bureau, New Mexico Cattle Growers Association and New Mexico Federal Lands Council. May it please the Court. The U.S. Fish and Wildlife Service and the other federal appellees violated the Endangered Species Act and the requirements of the APA by designating thousands of acres of land in New Mexico as critical habitat for the jaguar. The designation is arbitrary and capricious. The Endangered Species Act allows the service to designate unoccupied critical habitat if it is, quote, essential for the conservation of the species. In what sense are you aggrieved? Is it exclusive use or are you allowed to graze it? I'm sorry, what? Is the set-aside land exclusively set aside for non-use or is there co-use allowed? So what the designation does is it requires anybody who applies for a federal permit, our clients, ranching members essentially, when they apply for a federal permit for things like building corrals, it will go through the process of consultation, which will increase the expense and difficulty of getting permits for things like repairing corrals when they burn down, which has happened in the past. But they can keep grazing that land? Correct, yes. Assuming that consultation is not an issue for grazing, but it will potentially impede the ability to get fences and to continue other ranching activities in the area. So this appeal is primarily about the meaning of essential to conservation. And in this case, the service found that New Mexico, the New Mexico units, Units 5 and 6, are essential to the conservation of the species, but the rule itself says over and over again that the areas are actually of marginal value to the species. For instance, they say that, quote, habitat in the United States is at the edge of the species northern range and is marginal compared to known habitat throughout its range. They say that the most important habitat in the borderlands region is not even present anywhere in the United States. They go on over and over again undermining the idea that this is actually essential. The record demonstrates there's more than 30,000 jaguars south of the border, and yet the agency hopes that only a few will ever have habitat or rather visit the United States at any time, and maybe there'll be a few resident jaguars. And specifically in New Mexico, that would only be a subset of that potential use. From 1996 through 2011, there have been only five or six jaguars in the entire United States. There's only been three sightings in New Mexico itself. And so this marginal support for non-breeding jaguars out of a population of 30,000 jaguars is not what the Endangered Species Act meant when they said that habitat must actually be essential to the conservation of the species in order to be designated critical habitat if it's unoccupied at the time of listing. The services finding here makes no sense unless you change the word of essential to mean maybe helpful, perhaps helpful, might provide a little bit of support to the species. When you read through the rule over and over again, they say things like it could contribute to the borderlands region, the Northwestern Recovery Unit, therefore it's essential. That's not a logical leap. There's no facts that they use to support that leap. In other words, they're using a different definition of the word essential. They're suggesting that perhaps a little bit of support, a little bit of helpful aid is sufficient to satisfy the Endangered Species Act, and that's what we take issue with. Does your brief adequately distinguish between essential for conservation and critical habitat? Right. So critical habitat itself, if it's unoccupied at the time of listing as these units were, they define it as, the statute defines it as being essential to conservation. And what conservation is, is bringing the species to the point where it no longer is endangered or threatened. In other words, it's no longer in danger of extinction. And the abbreviation for that is, say, essential to recovery. Is that the right lingo? Sure. Yeah, so the point of So when you talk about essential to recovery, that's what we'll mean? Right. And what Congress defined recovery as is where it's no longer qualifying for federal protection as endangered. And endangered is in danger of extinction. Threatened is in danger of becoming endangered in the, quote, foreseeable future. Right? So that actually brings us to the second point, which is that essential to conservation. The service failed to make a foundational decision when they designated this land as critical habitat. So they said, the statute says it has to be essential to conservation. Conservation is bringing it to the point where it no longer requires federal protection. They never defined what that point of recovery is. They never even made a basic determination about it. The federal appellees have said that we're trying to superimpose the requirements of a recovery plan into the process of designating critical habitat. We're not doing that. The statute itself says it has to be essential to conservation. That means you have to have some end point that you're looking to, that they're trying to bring the species to. Right? It's like trying to build a house before you figure out how big the house is. You can't put the walls up and define the boundaries of the house until you decide how big the house needs to be. It just, it makes no sense. And it's not, the text itself requires them to make this point. Can you be a little more specific about, you're saying they have to make this point. What is the point exactly that you claim they needed to make and that they didn't make? Right. So they need to define what recovery looks like. They need to decide essentially, do you need 10,000 jaguars with robust habitat? Do you need 100,000 jaguars with okay habitat? What's the goal here? What's it going to take to get it? I think I'm understanding the logic of the argument, but do you have some legal foundation for it? Is there any, can you cite to any rule, statute, or case that holds that this is what they had to do? For the recovery, no. For the, we do not have a precedent that we can rely on. There are very few cases that have looked at this and we're making a unique argument in the sense that we're not saying you need to do a recovery plan or a specific subset of a recovery plan. As for the argument that... Well, so the answer's no. Yes. All right. Right. Yeah. And as for the argument about whether it's essential, other than the insight that Weyerhaeuser adds, which is that all habitat must at minimum be indispensable, unoccupied specifically, other than the insight in that case, this is a question of first impression as far as we know. So anyway... Could I just ask you, you haven't talked yet about the agency. It seemed relied quite a bit on the Jaguar recovery outline that was prepared. I guess it was a group project and a lot of experts, biologists come in, they get together, they've made this report. Did your client or any other client in the administrative proceedings rebut any of the scientific analysis in that report? We don't have to rebut the scientific... I'm just asking if anyone did. Sure. So what they did was they disputed the agency's finding. As for the recovery outline, when you read the recovery outline, it doesn't actually provide information that the United States is essential to the conservation of the species. What it says is the Northwestern Recovery Unit is essential to the conservation of the species. It says that secondary areas can be helpful and the borderlands region can be helpful. But the agency itself concedes you don't have to designate the entire secondary region. They didn't designate much of that, the valleys and whatnot that fall within this region, because they said it's not essential to conservation of the species. And so the idea that because the larger Northwestern Recovery Unit is essential, because the borderlands region is essential, therefore these areas in New Mexico are essential, it doesn't follow. The agency itself has confessed that it doesn't follow by excluding areas within that region. Are you saying that they've conceded that there's a portion of the units that they've designated that are not essential to conservation? No, what I'm saying is that they have, so their rationale is this larger unit is essential and therefore any subset in it is essential. That's how they justify designating parts of New Mexico, but then they exclude parts of that. And they say actually not all of it is essential. So they provide no facts that actually show it's indispensable. They haven't even suggested that it's impossible to save the species without New Mexico. And again, you can only understand the rule when you read it if you replace the word essential with the word helpful. I would like to reserve the rest of my time for rebuttal. Thank you, counsel. May it please the court, I'm Mark Hague from the Department of Justice, representing the Fish and Wildlife Service. Also at counsel table is John Buse from the Center for Biological Diversity. I'll be taking 12 minutes and Mr. Buse will take three minutes, assuming I watch my time. All right. It might be helpful to begin with the definition of terms. Well, I mean, there are different categories with different consequences. And it just seems to me it's easy when you start analyzing this case to toss categories and definitions around without much thought to the fact that there are distinctions. Yes. So there are two, the definition of critical habitat in Section 3 of the Endangered Species Act refers to occupied areas and unoccupied areas. And unoccupied areas can be designated as critical habitat. And I think this is on page three of our brief. If at the time they're listed, they contain the physical or biological features essential to the conservation of the species. And we know that conservation, as Judge Hart mentioned, conservation includes recovery, bringing the species back. And then for unoccupied habitat, specific areas outside the area occupied by the species, at the time it is listed, upon a determination by the Secretary that such areas are essential for the conservation of the species. And that's the category that we're talking about in this case. We're actually talking about both, Your Honor, because the service made a determination. But for some areas you're talking about one, in other areas you're talking about the other, or for both areas you're talking about both? For both areas we're talking about both. The service determined here in the first instance that Units 5 and 6, the two units that the ranchers are challenging, were occupied at the time of listing. And we explained the basis for that in the brief. But the agency also recognized that the evidence of occupation was limited and could be interpreted in different ways, and so it also looked at whether the units contained the physical and biological elements that were essential for the conservation of the species. Now, how do you define essential to conservation? Is there an official definition of what it takes to be essential? There is not, Your Honor. So, because there are two elements to your establishing it's essential. One is, what does essential mean?  And we apparently owe no deference to the agency with respect to the meaning of essential under Chevron. There's nothing that satisfies the requirements of Chevron. That's correct, Your Honor. So we don't have a definition of essential. We've got to decide that. And then you have to tell us the facts that show that's satisfied. So let me ask you, how likely is it that, I'm looking at my notes because I want to state this correctly, how likely is it that the jaguar could recover without designation of these units? Is it a 100% chance that they couldn't recover without those units? Is it a 90% chance that they couldn't recover? What does the government say? I don't think there's a 90% versus 100% answer in the record. I don't think there's anything in the record that says that. So how can we possibly not remain to the agency to decide that? How can we determine whether it was essential to recovery if we don't have any finding by the agency about the likelihood that the jaguar would recover if these units aren't designated? Well, I guess in saying that there's no percentage answer here. There's nothing. There's nothing. There's a go ahead. I may have missed something, so that's fine. I can tell you what there is. I think your question points out the importance of interpreting the language of the statute in the context of the whole question, essential to the conservation of the species. And there might be a good, but you don't have a definition. So the agency doesn't have one. So that leaves it to us to decide what it takes to be essential to recovery. You haven't even argued what that means. And there's no way, if you gave us a definition, we can decide whether that definition is satisfied here because we don't have any findings of how likely it is that the species, that the jaguar could not recover without designating these units. Well, I think the recovery outline actually does provide an answer to that question. And it's not a 100% versus 95% answer, but it's an answer. And according to opposing counsel, it's essentially it would be helpful. No. Okay. So tell me what it says. So opposing counsel characterizes this habitat in the northern recovery unit as marginal and says that the agency found that it was of marginal importance. But that's not correct. The habitat is marginal in terms of three of the seven physical and biological characteristics, the availability of water, the amount of cover, the availability of prey. But the fact that this is atypical habitat is part of what makes it important to the recovery of the species. The recovery plan explains that to recover the species, there have to be populations in the full, in a representative sample of the ecological conditions that the species occurs in. Well, here, the evidence is important because, as I understand the briefs, it was 1972, there was one indication or one presence of a cougar somewhere on one of the units, correct? No, Your Honor. There was no observation until 23 years later. The observations in units 5 and 6 are in 1995, 1996, and 2000. That's right. So there was one in 72. No. None in 72? Not in unit 5 or 6. But the evidence of observation here, there are over 100 Class I records of observation between 1963 and 2013, in the six total units. We're talking about 1 and 2, and there are three observations 23 years later, after the designation. That's correct. But that's not our issue. That goes to whether it's occupied. That's right. So you're saying, but here's my problem, and I think I know where you're hit, what you're trying to say here. You're saying there are things about this area that could be helpful in some way, but you have to do more. You have to say that it gives some likelihood that the Jaguars could not recover without designating these units, and there's nothing. No. There is something. There's a quantification of something? There's nothing quantified. What the recovery outline explains is that it's necessary, in order to recover the species, it's not enough to simply have a robust population in the Amazon. There have to be robust. Where does it say it's not enough? Because that would mean it couldn't recover without these, and I don't think it says that. I think we have citations for that in our brief. Well, the species is robust in Mexico, correct? Well, actually, that's partly correct. Well, that's important, because we need to know. I mean, is this really a species becoming extinct, or are you seeking to expand the territory of the species? One of the functions of these units is to provide habitat, of units five and six, is to provide habitat for Jaguars that are dispersing from the core areas in the Sonora, where they're breeding. So if there's a wall along the Mexico-U.S. border, 30 feet high or whatever, I take it that you're not going to have any species migrating into the United States. The rule actually addresses the potential impact of border wall. At this point, as near as I was able to find out, there are no approved construction projects that would block access to these. Let me just say one thing real quick. As I understand it, the rule specifically states that creating a viable, self-sustaining population in the U.S. is not a recovery goal. That's correct. Creating a viable, self-sustaining population in the U.S. is not a recovery goal. Is that in the rule, Your Honor? Your Honor, I'm not sure, but a reproducing population in the United States, that's right, that is correct. Self-sustaining. Self-sustaining, that's right. I'm sorry, Judge Matheson. Judge Hartz, to give you the citations that I was trying to get to before, I think it's Supplemental Appendix 139, 141, and I think there are also cites in our brief. 139 and 141? Yes. So, counsel, I think we've been knocking you off course a little bit. It's not hard to do, Your Honor. No, that's right. But what I'm interested in doing is giving you a chance to complete this sentence, which is the designation of Units 5 and 6 as unoccupied critical habitat. That is essential to conservation of the species because. And can you just complete that and we'll let you do it. Thank you. It's essential to the conservation of the species because recovery of the species requires protecting multiple populations in the full range of ecological settings that it occurs in. So the jaguars in the Amazon might be okay. Jaguars in the Xeric dry habitat that occurs in the Northwest Recovery Unit are in much worse shape. Total population of jaguars in Mexico is probably about 4,000. Total population in the Northwest is 4,000. So the number that opposing counsel gave of 30,000, that's the whole western hemisphere. That's not what we're talking about. Mexico is 4,000. Northwest Recovery Unit is probably in the range of 200 to 300. And this is also in the recovery outline. For that population in those unique ecological conditions to be resilient and able to survive, it has dispersing males need to be able to go out into secondary habitat, and then they need to be able to come back and breed. The population needs to be able to expand and contract. When you say come back, does that mean come back into Units 5 and 6 or come back where? I meant to go from Units 5 and 6 back into Mexico. I'm hearing you say that. It seems to me the word dispersal has come up a few times. So are Units 5 and 6 essentially dispersal areas? Is that why they've been designated? Yes, in part, but not solely. The historical evidence is that there were breeding populations. But they are being designated in the anticipation that they would be breeding areas, correct? Not necessarily. They will be useful. Not essential? It's not essential that they breed, and the designation is not dependent on the expectation that they breed there. What is your goal? Council has, I think, argued eloquently that there has to be a goal. What is your goal? The goal is the recovery of the species. But recovery in this area or what? I mean, recover what? To recover the species means to have resilient, redundant populations of the jaguar in the full range of habitats that it occupies. And does your jurisdiction extend to recovery of the species in another country? No, but the Fish and Wildlife Service cooperates with foreign governments, and it's working cooperatively with Mexico here. But its primary jurisdiction, the only place, you know, it can provide scientific advice. It can, I think there may be some funding grants, but no, the jurisdiction is only in the United States. In response to Judge Matheson's question, you used a couple words that are really important here. You said this is required and this is necessary. And is that language in the rule? Does it say that helping these populations is required for recovery or is necessary for recovery? I think we quote in our brief the places where the rule says it is therefore essential to the conservation of the species. Yeah, but that's what we don't know. You haven't defined essential. And that's why we can't do our job of applying the law unless we know the facts. And if you say essential, and essential means the possibility of recovery is only 80 percent or whatever, then we can't decide the case, I don't think. But if you use the words required or necessary, that's one thing. Maybe we need to know what you mean by that. But if you're just using the word essential and you haven't defined it, I'm not sure. If you'd finish up on your answer, please. Go ahead. I think if you look at the language in the rule that we've cited in our brief, it uses all those words, necessary, required, essential. Ultimately, I think this case is not a case about statutory interpretation of the word essential. It's a case of facts and whether the agency's expert judgment is supported by the facts in the record. Thank you, counsel. Is there any time remaining? There's no time remaining. Oh, I'm sorry. Thank you. Thank you. So I just want to briefly address a couple of things. One, we're not the ones who are stating that the habitat is marginal to the species. It's the agency that made that determination repeatedly throughout the rule. And secondly, there have only been, I just want to clarify, there's only been three sightings of jaguars in Units 5 and 6 since 1937 until the rule was passed. And those were decades after the time of listing. Which was 72. Right. The time of listing was 1972, and the sightings were in the mid-90s in one unit and 2006 in the other unit. And just singular sightings. Right. And then just one other comment. Was there, by the way, a sighting in 72? Wasn't there like a footprint or? No. What was the closest sighting to the 72, the date of designation? In Units 5 and 6, 1995. That was after the designation. Right. That's the closest one. 1972, were there any other than the 30s? Not since 1937. Thank you, Counsel. Yeah. By the way, Counsel, could you clarify, there's some reference to Chevron in your brief. There was a brief exchange with the government. Does Chevron have a role in this case? No, because the agency has not defined the word essential. And so that's left to you to decide what essential means. And, again, we're using their facts. And this is really just a question about what the statute says, and since they didn't define the relevant terms. But do you agree with the government that the agency used the term required and necessary in explaining why designation of Units 1 and 2 is correct? I can't think of a spot in the record where they did that. Instead, what they say is things like this. They say, for instance, it can contribute to the Northwestern Recovery Unit. They say connectivity is important with the United States in order to maintain populations in the United States. Well, that's obvious, because the species isn't breeding in the United States, and they're really just dispersing. I mean, in New Mexico, they've visited three times that we know of. So, obviously, connectivity is important if the goal is to have the species in the United States, which seems to be the real goal. Which it seems to be that the government is indicating that that isn't their goal. Or at least an invitation by Judge Hartz in one of his questions, the government is suggesting that we should define what is essential. That's not our role. That's the agency's role. This is here on agency appeal, is it not? It is here on agency appeal, but Chevron states that it's the court's job to say what the law is, and they have not defined essential. Well, what the law is is one thing, but the factual standards under which the law can or cannot be met is hardly one for the court to determine without benefit of expertise in the field or even the factual data upon which we should make that determination, it seems to me. So I would point you to New Mexico cattle growers, the case we cited in our brief, where this court stated that when the agency does not define a term, that it's left to the court to decide what that term means. And in the absence of a definition, you get to apply traditional rules of statutory construction. By defining it, we also determine what the factual criteria are under which it will be met? That sounds to me like an agency function, not a court function. No, and we're not asking you to do that. Because, again, we're relying on the agency's facts. I understand what you're asking. You're asking us to just throw the whole regulatory scheme out that it isn't met under any question. For New Mexico. That's right. Correct. Well, I understand it's New Mexico. You're not representing anybody else. That's right. And, again, we're using their facts for that. And the only way the rule, when you read the rule, the only way it makes any sense at all is when you And then you can actually make sense out of the rule. And I see I'm out of time. Thank you, counsel. Thank you. The case is submitted. Counsel are excused.